RAMÓN COLÓN, Plaintiff and Appellee, *v.* FRANCISCO SANTIAGO ET AL., Defendants and Appellants.

No. 8980. Argued November 9, 1944.—Decided December 18, 1944.

E. *Tristani, Jr.,* for appellants. J. I. *Fernández Segarra* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Ramón Colón brought an action of unlawful detainer at sufferance against the spouses Francisco Santiago and Car-

---

men Colón. In his complaint he alleged that he was the owner of a house and that the defendant spouses withheld possession of said house, occupying the same at sufferance, that is, without any contract and without paying any rent or consideration therefor, and against the express will of its owner, the plaintiff.

At the first hearing the plaintiff submitted evidence in support of his allegations and the defendants filed their answer in which they set up a demurrer, denied the averments of the complaint, and alleged several special defenses. After the case was heard on the merits, the district court rendered judgment in favor of the plaintiff.

From that judgment the present appeal has been taken, four errors being assigned in support of the appeal. We will consider first the fourth assignment, as we think that, if the error set forth therein has been committed it will require a reversal of the judgment. Said assignment reads thus:

"IV. The court erred in finding that there was no conflict of titles according to the evidence of both parties."

The lower court, in deciding the case as it did, denied the existence of a conflict of titles. Hence, the question to be decided by us is whether the ownership claim set up by the defendants is so manifestly unsubstantial and untenable as not to demand serious consideration, or whether the evidence in support thereof was sufficient to raise an issue meriting settlement within an ordinary action.

We will now summarize the evidence introduced by both parties.

The plaintiff submitted the following documentary evidence: (1) a certified copy of a public instrument executed on October 7, 1943, at Juana Díaz, by Alejandro Colón, a carpenter, in favor of plaintiff, setting forth that Alejandro Colón had built the house in question for, and at the request of Ramón Colón, plaintiff herein; and (2) several bills al--

leged to have been issued by the establishment from which the lumber used in the construction of the house had been purchased. We find that said bills were not actually introduced in evidence.

The oral evidence submitted by the plaintiff consisted of the testimony of several witnesses, as follows:

Ramón Colón stated that he was the owner of the house occupied by the defendants; that, at his request, Alejandro Colón had built said house; that it was he who had paid Alejandro Colón for the services rendered by the latter as carpenter; that his family—his grandmother, his aunt, and other persons—went to live there, but he resided elsewhere; that after his relatives died, the house was rented to José Ramos for $5 monthly; that after Ramos vacated the house the latter was closed; that while it was so closed, the defendants came one day and asked for permission which he granted; further on, he stated that the defendants got into the house and that he learned of it after they were occupying the same and that he did not bother them because they were relatives and badly off. That subsequently he asked them to move and defendants absolutely refused to quit; that they were not paying any rent or consideration whatever; that the last time he had requested them to vacate the house was in 1939. On cross-examination by the defense, he stated that the lot on which the house is situated belonged to the heirs of Eustaquio Colón; that the house was built in 1929; that that happened subsequent to the San Felipe hurricane.

Bernabé Fernández Segarra testified that he knew the plaintiff; that he used to purchase tobacco from the latter; that on one occasion the plaintiff asked him to keep some money—the proceeds of the sales—for him, as he needed it for the purchase of some lumber, and that afterwards he withdrew the money.

Alejandro Colón stated that he was a carpenter; that twelve or fourteen years ago he had built a frame house, zinc-roofed, for Ramón Colón; that said house had a front-

age of 18 feet and a depth of 21 feet; that one Lolo had helped him; that no one else had participated in such construction work; that said house was being occupied by the defendants.

Lorenzo Santiago stated that he had done the excavation work for the house; that the carpenter who worked there was Alejandro Colón; that said house was the one occupied by the defendants; that it was Ramón Colón who had paid him for his work. On cross-examination he stated that the house was 18 feet wide and 21 feet deep; that he remembered the exact measurements because the carpenter had informed him about them; that Joaquín Colón also participated in the construction work, but the only thing he did was to hold the boards, as the real carpenter was Alejandro Colón.

Rufino Rivera testified that he transported the lumber for the house; that he received it from the "Pacheco establishment," represented by Pepito Cintrón; that he did this at the request of Ramón Colón. On cross-examination he stated that he did not know whether Ramón Colón had other houses there; that he did not know the house on which the lumber had been used, for as soon as he arrived at the place he would deliver the lumber, collect the money, and then leave the premises.

Juan J. Cintrón testified that he knew the plaintiff, Ramón Colón, well; that he had sold lumber to the latter on several occasions; that about 12 or 14 years ago he sold some lumber to Ramón Colón which was transported to "Las Marías"; that he did not see the house on which the lumber was used; that he did not remember exactly the date of the sales.

Juan de Dios Rodríguez stated that he was acquainted with the plaintiff; that he knew that the latter had erected a house at "Las Marías", after the San Felipe hurricane; that the carpenter Alejandro Colón constructed said house; that he saw the carpenter there working with Joaquín Co-

lón; that it was Ramón Colón who paid the carpenter; that he saw him do it. On cross-examination this witness made so many contradictory statements that his testimony is not worthy of credit.

The defendants submitted the following evidence: Deed No. 3 executed on January 7, 1941, before Notary Félix Luis Padilla of Juana Díaz, whereby Don Joaquín Colón y Colón sold to Francisco Santiago (one of the codefendants herein) the lot on which the house in question is located.

Defendants also presented the following witnesses:

Francisco Santiago Colón, a codefendant, stated that he knew the plaintiff Ramón Colón; that the latter is a brother of the witness's wife (codefendant herein); that his wife had been living in said house ever since the San Felipe hurricane, when she went there to take care of Leonarda; that at that place there had been a house which was destroyed by the San Felipe Cyclone, and it belonged to Leonarda Colón (his wife's grandmother); that when said house was destroyed he took the ladies to Ponce to live with him; that while all of them were living in Ponce they decided to lease the land and to use the proceeds of such lease in building the house which they now occupy; that the land was leased to Luis Guillermo Mercado for $100, by a deed executed before Manolo Rivera, of Coamo; that Doña Leonarda gave the money to Joaquín Colón (Doña Leonarda's son and an uncle of witness's wife); that Joaquín Colón went with Ramón Colón to see about some lumber donated by the Red Cross for building the house, involved in this suit; that he was present when Doña Leonarda gave the money to Joaquín Colón; that the witness often went to see what progress was being made in the construction work; that Joaquín Colón and Alejandro Colón were the carpenters who built the house; that he gave them money for the purchase of the necessary materials; that said money came out of his personal funds; that when the house was finished Doña Leonarda, Doña Eugenia, and the witness's wife (the two first

named being grandmother and mother, respectively, of witness's wife) went to live in it; that meanwhile he remained in Ponce as he work there for Doña Ana González; that Joaquín Colón also lived in the house; that after the two ladies died, witness's wife went back to Ponce; that about seven or eight years ago, they decided to come and live in the house and sent Joaquín Colón for the key; that said house belongs to the witness's wife, and that for that reason he had always occupied the house as his own; that Ramón Colón was seeking to oust them because he, the witness, has forced the former to remove from witness's lot two houses which Ramón Colón had built thereon; that "it was a revenge" taken by Ramón Colón against the witness for the latter's action in compelling the former to remove the above-mentioned house. On cross-examination he stated that he could not tell exactly whether the money which he alleged to have contributed was used for wages, materials, or nails; that everything was done informally, as relatives were involved, and that he was satisfied so long as the money was spent in the house.

Carmen Colón de Santiago, another codefendant, testified that the house in which he was living with her husband belonged to her; that she was able to acquire it—after the San Felipe had destroyed her grandmother's house—with the proceeds of the lease to Mercado, the aid given by the Red Cross, and money furnishd by her husband; that about nine years previously Ramón Colón had built several houses; that Ramón Colón owned about four houses.

Víctor Santiago testified that he lived at "Las Marías"; that he was 52 years old; that he knew the defendants and that the latter lived in a house which had belonged to their grandmother Leonarda Colón; that Ramón Colón built two houses there; that Joaquín Colón and Alejandro Colón constructed the house involved in this suit; that he saw the house being built. On cross-examination, he stated that Joaquín Colón and Alejandro Colón were the carpenters who

had built the house; that he did not know who paid them for their work; that he did not know where the lumber was purchased. (The Judge stated in the record that the witness hesitated while testifying.)

Carlos Georgetti stated that he knew the defendants; that the latter generally lived in Juana Díaz and sometimes in Coamo, in the ward of Clausells; that he knew Doña Leonarda, the grandmother, as she had raised his wife; that on one occasion he had subscribed as a witness a document "in order to get $100 for Doña Leonarda"; that he saw Doña Leonarda receive the $100; that he had seen the house in question as he had visited it several times.

Juan Rivera Torres testified that he knew the defendants; that he used to talk with Francisco Santiago (codefendant herein) when the latter passed by and said to him: "I am going to see how the house is coming on, and to pay the boys."

As rebuttal witnesses plaintiff introduced:

(1) Ramón Colón who took the stand and denied the testimony given by the defendants; and

(2) Alejandro Colón who again testified that Ramón Colón was the only person from whom he had received money for his work as a carpenter.

From the foregoing summary of the evidence introduced by both parties, it clearly appears that the only proof submitted by the plaintiff regarding his title to the house is an instrument (a building notarial act) executed in his favor by Alejandro Colón, the carpenter who is alleged to have built the house. In said instrument the grantor thereof, after stating that he had built the said house at the request of the plaintiff, asserts that the lot on which the house stands belongs to the Heirs of Colón. The defendants have met such documentary evidence by submitting a deed of sale executed by Joaquín Colón in favor of Francisco Santiago (one of the codefendants herein) conveying to him the ownership

of the lot. Said deed bears date of 1941. It should be noted that in the instrument in favor of the plaintiff, which was executed in 1943, it is stated that said lot belonged to the Heirs of Colón, whereas the exclusive ownership thereof has been vested in the defendants since 1941. Such inaccuracy is sufficient to raise some doubts regarding the absolute veracity and accuracy of the remaining portion of said instrument, which does not appear to have been recorded in the registry of property and in which a carpenter states that he built that house at the request of the plaintiff. Those doubts are strengthened by the fact that the carpenter, as well as the plaintiff, insisted at the trial that the lot belonged to the Heirs of Colón. The plaintiff himself in his testimony admits that he is not sure as to the identity of those heirs.

The deed of sale of the lot introduced by the defendants proves nothing regarding the ownership of the house. Nevertheless, it gives to their claim some color of good faith, inasmuch as it shows inaccuracy in the only documentary evidence submitted by the plaintiff. If that instrument in favor of the plaintiff had not been executed by the carpenter, the same, like the deed introduced by the defendants, could not have been admitted, it being "selfserving evidence." Hence, if the probative force of the only documentary evidence presented by the plaintiff depends upon the veracity and accuracy of the grantor of the instrument, once the inaccuracy of the latter is shown, some doubt arises as to the truth of the entire contents of the instrument. And if to that doubt and to the apparent good faith of the defendants, is added the fact that the latter, in their answer to the complaint, denied plaintiff's title, and that, as a special defense, they set up a claim of ownership to the house, which claim was supported by their testimony, corroborated in part by the witnesses introduced, who in making such corroboration also established the apparent source of the money which the defendants alleged to have used in building the house, the con-

306

clusion must be reached that a conflict of titles has been established.

Without expressing any opinion as to the sufficiency of that evidence to establish ownership, we think, nevertheless, that it is sufficient to show the good faith of the claim set up by the defendants; and since there was some evidence as to the existence of a right in opposition to that of the plaintiff, and there being involved a speedy and summary proceeding such as is the action of unlawful detainer, we think that the action brought herein should be dismissed and, consequently, that the conflicting claims should be settled through the institution of the proper action of revendication. " 'It is well settled that conflicting claims as to title if *bona fide* can not be tried and determined in an unlawful detainer proceeding. . . An apparently *bona fide* claim supported by evidence sufficient to show some color of right, evidence sufficient to present a genuine question of title, will justify and require a dismissal of the proceeding.' . . . We are aware that 'the mere allegation of title by the defendant is not sufficient, but it is necessary that he present at least some evidence of the same,' and that 'in the allegations and proof of defendant there should be sufficient facts to show that his pretense of title has some basis.' " *Heirs of Pedroza* v. *Martínez, ante,* pp. 5, 9, decided July 26, 1944.

The judgment appealed from should be reversed and another rendered instead dismissing the complaint.